UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT NOIA and EVELYN NOIA,                    :
                                                :
                            Plaintiffs,         :        MEMORANDUM
                                                :        AND ORDER
            - against -                         :
                                                :        06 CV 353 (JG)
DIVISION 1181 A.T.U. -- NEW YORK                :
WELFARE FUND and THE CONSOLIDATED               :
EDISON RETIREE HEALTH PROGRAM,                  :
                                                :
                            Defendants.         :
----------------------------------------------------------------X

A P P E A R A N C E S :

        MARK PETER SCHERZER
            7 Dey Street, Suite 600
            New York, NY 10007
            Attorney for Plaintiff

        MARY SCHUETTE
            Consolidated Edison Retiree Health Program
            4 Irving Place, Room 1815-S
            New York, NY 10003
            Attorney for Defendant Consolidated Edison Retiree Health Program

        SLEVIN & HART, P.C.
            1625 Massachusetts Avenue, Suite 450
            Washington, D.C. 20036
        By:  Brian J. Petruska
            Attorneys for Defendant Division 1181 A.T.U. -- New York Welfare Fund

JOHN GLEESON, United States District Judge:

        Robert Noia suffers from primary pulmonary hypertension, a grave illness

requiring expensive medical treatment.  Fortunately, Noia is entitled to certain medical benefits

from three welfare-benefit plans: (1) the Consolidated Edison Retiree Health Program ("the Con

Ed Program"), a plan for certain retired employees of Consolidated Edison Company of New

York, Inc. ("Con Ed"); (2) the Division 1181 A.T.U. -- New York Welfare Fund ("the Division

1181 Fund"), a plan for, among others, employees of participants in collective-bargaining agreements with the Division 1181 A.T.U., AFL-CIO; and (3) Medicare Part A and Part B. Unfortunately, the Con Ed Program and the Division 1181 Fund dispute which plan must provide primary coverage of Noia's claims. So while everybody agrees Noia is entitled to a certain amount of help paying his medical bills, he has obtained only a small fraction of that amount.

Noia and his wife, Evelyn Noia,[1] bring this action against the Con Ed Program and the Division 1181 Fund[2] pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* They ask principally for (a) benefits from the Division 1181 Fund pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and (b) a declaration that one or the other defendant provides primary coverage of Noia's claims.[3] On October 26, 2006, with the consent of both defendants, I issued an order granting the plaintiffs' motion for a preliminary injunction, requiring the defendants to share primary coverage until the ultimate disposition of this case. *See* Docket Entry 41 ("On consent of the parties, [the Con Ed Program] will continue to provide coverage of plaintiff's Medicare Part D prescription drug expenses.

---

[1]    Unless otherwise specified, "Noia" as used here refers to Robert Noia.

[2]    As stated at oral argument, the motion by the Board of Trustees of the Division 1181 Fund to intervene on behalf of the Fund is granted.

[3]    The latter type of relief may not be granted pursuant to ERISA § 502(a)(3), the provision cited in the complaint, which authorizes only "equitable relief." 29 U.S.C. § 1132(a)(3). When a "prayer for declaratory relief is merely a prelude to a claim for damages, . . . the controversy is legal not equitable." *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 2004 WL 3019500, at *13 (S.D.N.Y. Dec. 29, 2004), *aff'd*, 173 Fed. Appx. 936 (2nd Cir. 2006). I therefore construe the complaint to seek relief pursuant to ERISA § 502(a)(1)(B), which permits Noia "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). *See Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 530 n.3 (2d Cir. 2006) ("A complaint need not set out the correct legal theory on which the claim is based, so long as the complaint provides full notice of the circumstances giving rise to the plaintiff's claim.").

[The Division 1181 Fund] will provide plaintiff's other health benefits coverage, acting as primary carrier to that extent pending the outcome of this case.").

Before me now are three cross-motions for partial summary judgment -- from the plaintiffs, the Con Ed Program, and the Division 1181 Fund -- on the question which plan is primary. I heard oral argument on the motions on March 23, 2007. For the reasons set forth below, I conclude that the Division 1181 Fund must provide primary coverage of Noia's claims through June 23, 2006, but I cannot yet determine which plan must provide primary coverage after June 23, 2006.[4]

BACKGROUND

Unless otherwise noted, the facts set forth below are not in dispute.

A.      *Noia's Medical Condition and Treatment*

Noia suffers from primary pulmonary hypertension, also known as "IPAH," a disease that causes, among other symptoms, shortness of breath; fatigue; dizziness; fainting spells; swelling of the ankles, abdomen or legs; bluish lips and skin; and chest pain. Palevksy Decl. ¶ 3, July 26, 2006. Untreated IPAH results in an average life expectancy of 2.8 years from the first diagnosis; untreated advanced IPAH usually causes death in about six months. *Id.*

To treat his IPAH, Noia receives a drug named Flolan through an implanted in-dwelling catheter. *Id.* ¶ 5. Noia suffers vasculitis as an allergic side effect to Flolan, however, so to treat that condition he also receives methotrexate and prednisone, which, being immunosuppresants, make Noia vulnerable to catheter infections. *Id.* Noia also takes a daily

---

[4]     The defendants each move for partial summary judgment on various questions of allocation of the remedy between them. Because I conclude that the extent of the defendants' liability for past and future payments cannot be fully determined as a matter of law, my consideration of those motions now would be premature. Those cross-motions are denied.

3

oral medication named Tracleer to supplement and permit lower doses of Flolan. *Id.* ¶ 6. Flolan

and Tracleer are Noia's principal medications. *Id.* ¶ 4. In addition to those and the methotrexate

and prednisone, he also takes daily doses of Coumadin, spironolactone, Digitek, and folic acid,

and when needed takes albuterol, Biaxin, and Benzonatate. Noia Decl. ¶ 9, Jan. 25, 2007.

      Noia's doctor has recommended that he change to a different combination of

drugs to mitigate the "risk of serious complications and infections," "discomfort," and the

"likelihood or severity of [the] vasculitis" presented by Flolan. Palevksy Decl. ¶ 8, July 26,

2006. Specifically, the doctor has recommended Ventavis, which "has been proven in clinical

studies to be effective and, indeed, to be synergistic with Tracleer." *Id.*

      Noia regularly undergoes medical tests, requiring monthly blood tests and

biannual echocardiograms. Noia Decl. ¶ 9, Jan. 25, 2007. Noia also visits an array of

specialists, including quarterly visits to a pulmonologist and a rheumatologist. *See id.* ¶ 8.

B.    *Noia's Eligibility for Medicare Coverage*

      After the Social Security Administration determined that Noia's condition made

him disabled, Noia became eligible for Medicare on September 1, 2002. *Id.* ¶ 6; *see also*

Defendant Consolidated Edison Retiree Health Program's Statement of Undisputed Material

Facts Pursuant to Local Civil Rule 56.1 ("Con Ed's Rule 56.1 Statement") ¶¶ 3-4; Defendant

Division 1181's Statement of Disputed and Undisputed Facts Submitted in Compliance with

Local Civil Rule 56.1 ("Division 1181's Rule 56.1 Response") 3. Noia enrolled in Medicare

Part A, and then in the spring of 2003 purchased Medicare Part B coverage.[5] Noia Decl. ¶ 6,

---

[5]    Medicare Part A provides automatic coverage to Medicare beneficiaries for inpatient treatment and other hospital-related services. *See* 42 U.S.C. §§ 1395c to 1395i-5; *see also Matthews v. Leavitt*, 452 F.3d 145, 147 n.1 (2d Cir. 2006). Medicare beneficiaries covered by Part A can also purchase Medicare Part B, which provides supplemental insurance coverage of certain doctor visits and other outpatient treatment. *See* 42 U.S.C. §§ 1395j to

Jan. 25, 2007. Noia has not purchased a Medicare Part D prescription medication plan.[6] *Id.*

C.      *Noia's Eligibility for Benefits from the Con Ed Program*

        Noia worked for Con Ed for 28 years. *Id.* ¶ 2. In March 2000, having become disabled with IPAH, he retired and enrolled in the Con Ed Program. *Id.* ¶¶ 2, 5; *see also* Defendant Consolidated Edison Retiree Health Program's Response to Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Con Ed's Rule 56.1 Response to Plaintiffs") ¶ 3. The Con Ed Program is a self-insured single-employer welfare-benefit plan for certain retired Con Ed employees and their dependents, and is governed by ERISA. *See* The Consolidated Edison Retiree Health Program Summary Plan Description ("Con Ed SPD") 1, 103. Noia is covered by two components of the Con Ed Program: a hospitalization and medical-benefits plan administered by United HealthCare Service, LLC, and a prescription drug plan administered by Caremark Inc. *See id.* at 1; Matos Decl. ¶¶ 5-7, Jan. 26, 2006; *see also* Division 1181's Rule 56.1 Response 3-4.

        There is no dispute that Noia has been and is currently covered by the Con Ed Program. *See* Noia Decl. ¶ 5, Jan. 25, 2007. In addition, there is no dispute that the Con Ed Program coordinates benefits with other plans in part pursuant to the following language:

> **Dependent Rule:** If a plan covers you as an employee, member, subscriber, or retiree, then that plan is primary. . . .
>
> There is a special exception to the dependent rule. If you are Medicare-eligible and Medicare is secondary to the plan covering you as a dependent, and Medicare is primary to the plan covering you as a retiree, then the order of benefits is

1395w-4; *see also Matthews*, *supra* at 147 n.1.

     [6]     Medicare Part D, a program that became effective on January 1, 2006, provides Medicare beneficiaries who enroll with certain prescription medications not covered by Part A or B. *See* 42 U.S.C. §§ 1395w-101 to 1395w-152; *see also Matthews*, 452 F.3d at 147 n.1.

> reversed.  In this case, the plan covering you as a retiree is secondary and the plan
> covering you as a dependent is primary.

Con Ed SPD 82; *see also* Con Ed's Rule 56.1 Statement ¶ 26; Division 1181's Rule 56.1

Response 4; Plaintiff's Statement Pursuant to Local Rule 56.1 ("Noia's Rule 56.1 Statement") ¶

32.

          The parties do dispute whether the Con Ed Program is "supplemental" to

Medicare, however.  The Con Ed Program's Summary Plan Description ("SPD") provides as

follows:

> *If you're a Medicare-eligible participant*, the **Retiree Health Plan** offers you a
> supplemental medical plan with UnitedHealthcare.  The Plan works together
> with your Medicare coverage and automatically offsets Medicare approved
> charges for reimbursement.

Con Ed SPD 46; *see also* Con Ed's Rule 56.1 Statement ¶ 25; Division 1181's Rule 56.1

Response 4-5; Plaintiffs' Opposition Statement of Material Facts Pursuant to Local Rule 56.1

("Noia's Rule 56.1 Response") ¶¶ 16-18.  Pursuant to this language, the plaintiffs characterize

the Con Ed Program as providing "comprehensive benefits, with coordination of benefits when

enrollees are eligible for benefits under Medicare."  Noia's Rule 56.1 Response ¶ 16 (citing Con

Ed SPD 46-50).  But the plaintiffs claim that the Con Ed Program is not wholly Medicare-

dependant -- they claim the plan covers some expenses not covered by Medicare, like private

duty nursing, *see* Con Ed SPD 42-43, and Medicare covers expenses not covered by the Con Ed

Program, like shoe orthotics, *see id.* at 62.  They also suggest that the Con Ed Program has the

discretion to cover payments over and above those covered by Medicare.  Plaintiff's Reply

Memorandum in Further Support of Their Summary Judgment Motion 4-5 n.6 (citing Scherzer

Decl. ¶¶ 5.01(b)(iv), 4.01).  The plaintiffs also claim the Con Ed Program is not authorized by

the applicable statute for Medicare supplemental plans (so-called "Medigap" policies).[7]  Noia's

Rule 56.1 Response ¶ 16.

By contrast, the Con Ed Program characterizes itself as "a Medicare supplemental

plan" that "pays, *if at all*, a percentage of approved Medicare Part A and B expenses that have

not been fully paid for by Medicare."  Con Ed's Rule 56.1 Statement ¶ 17 (citing Con Ed SPD

64-66) (emphasis added); *see also* Matos Decl. ¶ 7, Sept. 29, 2006 ("[T]he Con Edison Retiree

Plan is designed to provide primary coverage to the non-Medicare-eligible participant and

supplemental coverage to the Medicare-eligible participant.  Medicare is the primary payer plan

and the Con Edison Retiree Plan is the secondary payer plan for each Medicare-eligible

particpant."); *id.* ("A Medicare-eligible participant cannot elect to be in the non-Medicare

group.").

D.      *Noia's Eligibility for Benefits from the Division 1181 Fund*

Evelyn Noia, Noia's wife, works as a bus matron on a school bus that transports

disabled children, and is therefore an eligible participant in the Division 1181 Fund.  *See* Noia

Decl. ¶ 4, Jan. 25, 2007; D'Ulisse Decl. ¶ 7, Jan. 26, 2007.  The Division 1181 Fund is a self-

funded, multiemployer benefit plan for, primarily, employees of signatories to collective-

bargaining agreements with the Division 1181 A.T.U., AFL-CIO.  D'Ulisse Decl. ¶ 3, Jan. 26,

2007.  The Division 1181 Fund covers Noia as a dependent of his wife.  *See* D'Ulisse Decl. ¶ 9,

Jan. 26, 2007.

Until June 23, 2006, Rules 2 and 3 of the coordination of benefits provision of the

Division 1181 Fund plan read in part as follows:

_____

[7]      Medigap policies are authorized by 42 U.S.C. § 1395ss(g)(1).

2.  If you are covered as an employee under one health plan and are covered as a dependent under the other health plan, then the health plan covering you as an employee is primary.

Examples of Rule 2 are as follows:

**If you are a Covered Employee and your spouse has active coverage under another health plan:**
**For you:** Your active coverage is primary and your spouse's coverage is secondary;
**For your spouse:** Your spouse's primary coverage is the other health plan and this Plan's Dependent coverage is secondary.

**If you are a Covered Employee and your spouse has active coverage under another health plan and Medicare:**
**For you:** Your active coverage is primary and your spouse's coverage is secondary;
**For your spouse:** Your spouse's primary coverage is the other health plan and Medicare is secondary.

3.  If you are covered as an active employee or the dependent of an active employee and you are also covered as a retired/laid-off employee or the dependent of a retired/laid-off employee under another health plan, the health plan covering you as an active employee is primary. However, if the other health plan(s) do(es) not have this rule and as a result the plans do not agree on which is primary, this rule is ignored. Examples of Rule 3 are as follows:

. . . .

**If you are a covered employee and your spouse is a covered retiree under this Plan (with Medicare):**
**For you:** Your active coverage is primary and your spouse's retiree coverage is secondary;
**For your spouse:** This Plan's active Dependent coverage is primary and Medicare is secondary.

Division 1181 A.T.U. -- New York Welfare Plan Summary Plan Description ("Division 1181 Fund SPD") 36-37.

The Division 1181 Fund maintains that on June 23, 2006, its Board of Trustees issued a document titled "Summary of Material Modifications" ("SMM"), which states that

"[t]he Board of Trustees of the Division 1181 A.T.U. -- New York Welfare Fund has adopted the following clarification to Plan's [*sic*] rules on Coordination of Benefits." Division 1181 Fund Summary of Material Modifications ("Division 1181 Fund SMM") 1. The Con Ed Program disputes that this document was, in fact, properly issued by the Division 1181 Fund Board of Trustees. Defendant Consolidated Edison Retiree Health Program's Response to Defendant Division 1181 A.T.U. -- New York Welfare Fund's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ¶ 17.

Whatever the provenance of the SMM, the document alters Rules 2 and 3 of the Division 1181 Fund coordination of benefits provision in relevant part as follows (additions underlined, deletions struck through):

2.  If you are covered as an employee, a former employee or retiree under one health plan and are covered as a dependent under the other health plan, ~~then~~ the health plan covering you based on your employment ~~as an employee~~ is primary and the plan covering you as a dependent is secondary.

    Examples of Rule 2 are as follows:

    . . . .

    *If you are a Participant and your spouse has retiree coverage under another plan and Medicare:*
    For you: Your coverage is primary and your spouse's retiree Dependent coverage is secondary.
    For your spouse: Your spouse's retiree coverage is primary, this Plan's Dependent coverage is secondary, and Medicare is third.

3.  If you are covered as an active employee ~~or the dependent of an active employee~~ under a health plan and you are also covered as a retired/laid-off employee ~~or the dependent of a retired/laid-off employee~~ under another health plan, the health plan covering you as an active employee is primary. ~~However, if the other health plan(s) do(es) not have this rule and as a result the plans do not agree on which is primary, this rule is ignored.~~ An ~~e~~Examples ~~of Rule 3 are~~ is as follows:

9

> *If you are a Participant and you also have retiree coverage under another*
> *health plan:*
> *For you:*  Your coverage under this Plan is primary and your retiree
> coverage is secondary.[8]

Division 1181 Fund SMM 1-2.

E.       *Noia's Receipt of Benefits*

The defendants' primary coverage of Noia's medical treatment has been

scattershot.  For instance, Flolan -- the most expensive drug taken by Noia (at a monthly rate of

$4,851.84) -- and most of Noia's doctor and hospital visits were covered by the Division 1181

Fund until the fall of 2003.  Noia Decl. ¶¶ 7-8, Jan. 25, 2007.  The Division 1181 Fund began to

refuse most payments for Flolan after early 2004.  *Id.* ¶ 8.  The plaintiffs claim, however, that the

Division 1181 Fund acted as the primary payer of Noia's remaining drugs (with the exception of

Tracleer) until the summer of 2006.  *Id.* ¶ 9.  The Division 1181 Fund disputes this claim.

*Compare id.* ¶ 8 *with* Division 1181 Fund's Rule 56.1 Response 2; D'Ulisse Decl. ¶ 9, Jan. 26,

2007.  The Division 1181 Fund also disputes that it has been paying for Noia's blood tests and

echocardiograms.  *See* Division 1181 Fund's Rule 56.1 Response 2; D'Ulisse Decl. ¶ 9, Jan. 26,

2007.  It agrees, on the other hand, that after early 2004 it stopped paying for Noia's visits to his

pulmonologist and rheumatologist.  *See* Noia Decl. ¶ 8, Jan. 25, 2007; Division 1181 Fund's

Rule 56.1 Response 2; *but see* D'Ulisse Decl. ¶ 8, Jan. 26, 2007 (characterizing the cut-off date

as August 24, 2004).  As for Tracleer, the Con Ed Program has covered the drug as primary

payer until the present.  *See* Noia Decl. ¶ 9, Jan. 25, 2007.

The 2004 cut-off of Noia's coverage by the Division 1181 Fund occurred because

---

[8]        (Former examples deleted.)

the Board of Trustees of the Fund interpreted the coordination of benefits provision then in effect to prohibit its primary coverage. *See id.* ¶ 8. The parties do not appear to dispute that Noia "appealed" in 2003, when the Division 1181 Fund "first raised questions about his primary coverage." Noia's Rule 56.1 Statement ¶ 23 (citing Noia Decl. ¶ 10, Jan. 25, 2007); Division 1181 Fund's Rule 56.1 Response 2. The parties also appear to agree that in August 2004, Evelyn Noia submitted a coordination of benefits form stating her husband had retiree medical coverage with the Con Ed Program. D'Ulisse Decl. ¶ 8, Jan. 26, 2007. On January 11, 2005, the supplier of Flolan, the Accredo Health Group, appealed the denial of many of Noia's claims internally in the Division 1181 Fund. *Id.* ¶ 10. Those appeals were unsuccessful. *Id.* ¶ 12. In rejecting the Accredo appeal, the Division 1181 Fund Board of Trustees relied upon Rule 2 of its coordination of benefits rules (the rules in effect prior to the alteration on June 23, 2006), finding Rule 3 inapplicable. *Id.* ¶ 13.

Noia submitted some of his unpaid claims to the Con Ed Program, but the plan administrator's appeals bureaucracy responded that the Program was secondary to the Division 1181 Fund, citing the Program's own coordination of benefits provision. Noia Decl. ¶ 12, Jan. 25, 2007. Noia did not appeal that finding further, in part because he believed it was correct. *Id.*

In June 2005, Noia sought preauthorization from both defendants for Ventavis, but neither plan processed the request because each determined the other must first act as primary payer. *Id.* ¶ 13. This action followed.

## DISCUSSION

The question presented for partial summary judgment is which defendant must provide primary coverage of Noia's qualifying medical expenses. The Division 1181 Fund

argues that (1) the plans' coordination of benefits provisions are incompatible because by their terms they each require the other to be primary, and (2) federal common law breaks the tie by making Noia's employer's plan (*i.e.*, the Con Ed Program) primary. The Con Ed Program principally argues that (1) the terms of the coordination of benefits provisions require the Division 1181 Fund to be primary before June 23, 2006, and (2) to the extent the provisions conflict, the Division 1181 Fund must still be primary because (a) the Con Ed Program by its "supplemental" nature must pay after Medicare does, and (b) Medicare law prohibits private plans like the Division 1181 Fund, which provide coverage based on a person's status as a current employee, from being secondary to Medicare.

A.    *Exhaustion*

As a threshold matter, the Con Ed Program argues that the plaintiffs are not entitled to a judgment regarding primary coverage because Noia has not submitted all his contested claims to the Program to obtain administrative review of each. I disagree: it would be perverse to dismiss this case as against the Con Ed Program for lack of exhaustion. First, the Program concedes that Noia did not appeal its decision that the Division 1181 Fund was primary because Noia thought the decision was correct. *See* Noia Decl. ¶ 12, Jan. 25, 2007; Con Ed's Rule 56.1 Response 2. Second, the Program's across-the-board refusal to yield secondary payment status for any of Noia's Medicare A- and B-eligible payments indicates that further exhaustion by Noia would have been futile. Third, given the expense of Noia's medications and the gravity of his medical condition, Noia might well have been prejudiced by further time-consuming administrative review.

Moreover, the question before me does not concern any plan's denial of any

particular claim.  Rather, the plaintiffs have asked me to determine -- because the plans themselves are unable to do so -- which defendant has primary payer status by virtue of (a) an interpretation of their respective SPDs, including their coordination of benefits provisions, and (b) federal common law.  The question is basically one of contract interpretation.  *See Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004).  Because no given claim as to the Con Ed Program is at stake, I need not have before me an administrative denial of every claim to have "a sufficiently clear record of administrative action" for my review to proceed "under the arbitrary and capricious standard."  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005) (citation omitted).  Accordingly, I exercise my discretion to conclude that further exhaustion is not required.  *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 439 (2d Cir. 2006) (failure to exhaust claim-processing administrative remedies, being an affirmative defense under ERISA and not a jurisdictional requirement, is "subject to waiver, estoppel, futility, and similar equitable considerations").

B.    *The Question of Primary Coverage*

        1.    The Summary Judgment Standard of Review

                A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party must demonstrate that no genuine issue exists as to any material fact.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law."  *Anderson v.*

13

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

> [T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo*, 22 F.3d at 1223-24 (citations omitted). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

    2.    <u>The Coordination of Benefits Until June 23, 2006</u>

When a coordination of benefits dispute involves the review of an administrator's construction of its SPD, the dispute is susceptible to decision on summary judgment. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 444 (2d Cir. 1995) (administrator's construction of plan found reasonable on summary judgment). The parties appear to agree that the welfare-benefit plans at issue here grant discretionary authority to the plans' administrators to determine

eligibility for benefits,[9] so I defer to the administrators' construction of their own plans.

*Firestone Tire & Rubber Co. v Bruch*, 489 U.S. 101, 115 (1989). Specifically, I may overturn denials of benefits only if they were "arbitrary and capricious," *i.e.*, only if the denial "was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan*, 52 F.3d at 442 (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)); *see also Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 489 (2d Cir. 2006).

The Board of Trustees of the Division 1181 Fund interpreted the version of its SPD that was in effect prior to June 23, 2006 to make Noia's retiree plan, not the Division 1181 Fund, the primary payer of his medical expenses. The Board relied upon Rule 2 of the SPD coordination of benefits provision then in effect, finding Rule 3 inapplicable. D'Ulisse Decl. ¶ 13, Jan. 26, 2007. I now reverse the decision of the Board of Trustees to deny Noia's claims for benefits through June 23, 2006, because it was unreasonable to rely upon the old Rule 2 and not the old Rule 3.

Noia is the dependent of Evelyn Noia, an active employee participant in the Division 1181 Fund. Noia simultaneously participates in the Con Ed Program as a retired employee and in Medicare. That combination of dependent status, retiree status, and Medicare participation yields Noia primary coverage from the Division 1181 Fund through June 23, 2006 by operation of the old Rule 3 of the Fund's SPD. Old Rule 3 provided, in relevant part, as follows:

> If you are covered as an active employee or the dependent of an active employee and you are also covered as a retired/laid-off employee or the dependent of a retired/laid-off employee under another health plan, the

---

[9]    Counsel conceded as much at oral argument.

health plan covering you as an active employee is primary.  However, if the other health plan(s) do(es) not have this rule and as a result the plans do not agree on which is primary, this rule is ignored.  Examples of Rule 3 are as follows:

. . . .

**If you are a covered employee and your spouse is a covered retiree under this Plan (with Medicare):**
**For you:**  Your active coverage is primary and your spouse's retiree coverage is secondary;
**For your spouse:**  This Plan's active Dependent coverage is primary and Medicare is secondary.

Division 1181 Fund SPD 37.  Noia fits precisely into the cited example, because Evelyn Noia is a "covered employee" with respect to the Division 1181 Fund, Noia is the "spouse" of Evelyn Noia, Noia is a "covered retiree" because he is a retired employee of Con Ed and dependent of Evelyn Noia, and Noia is entitled to Medicare.  Thus, the Division 1181 Fund's "active Dependent coverage is primary and Medicare is secondary."  The application of Rule 3 makes the Division 1181 Fund the primary payer of Noia's medical expenses.

The Division 1181 Fund argues that old Rule 2, not old Rule 3, applies to Noia's case.  Old Rule 2 provided that:

If you are covered as an employee under one health plan and are covered as a dependent under the other health plan, then the health plan covering you as an employee is primary.

Examples of Rule 2 are as follows:

**If you are a Covered Employee and your spouse has active coverage under another health plan:**
**For you:**  Your active coverage is primary and your spouse's coverage is secondary;
**For your spouse:**  Your spouse's primary coverage is the other health plan and this Plan's Dependent coverage is secondary.

**If you are a Covered Employee and your spouse has active coverage**

**under another health plan and Medicare:**
**For you:** Your active coverage is primary and your spouse's coverage is secondary;
**For your spouse:** Your spouse's primary coverage is the other health plan and Medicare is secondary.

Division 1181 Fund SPD 36-37. The Division 1181 Fund argues that its application of this rule to Noia's situation was reasonable "because: (i) he indisputably is covered as a dependant by the Division 1181 Fund; and (ii) he indisputably is covered as a retiree -- i.e., as a former-employee -- of the Con Ed Plan." Defendant Division 1181 Fund's Memorandum of Law in Support of Its Motion for Summary Judgment ("Division 1181 Fund Br.") 19. Obviously, the Fund presumes that the term "employee" in Rule 2 can sensibly encompass retired employees. That presumption may not be reasonable.[10] I pass over the question, however, because I conclude on independent grounds that it was unreasonable to apply Rule 2, rather than Rule 3, to determine Noia's primary coverage.

The Division 1181 Fund argues that "Rule 3 does not enter into a proper analysis of this question" because the "structure" of the coordination of benefits provision "reveals that the rules are to be interpreted in sequence." *Id.* at 20. In fact, the Division 1181 Fund proposes a stricter rule than sequential interpretation -- it proposes that it is reasonable for the administrator to extrapolate from the SDP a rule of interpretation by which, reading the rules from Rule 1 onward, the administrator stops reading as soon as she gets to a plausibly applicable rule, no matter how clearly applicable a subsequent rule may be. Following this methodology, the

---

[10]     Whether that denotation is available in this context likely requires argument beyond the summary assertion that "Rule 2 is ambiguous on the question of whether the term 'employee' as used in that rule includes or excludes former employees." Division 1181 Fund Br. 19. Indeed, Rule 3's distinction between a "covered employee" and a "covered retiree" strongly suggests otherwise. Division 1181 Fund SPD 37.

Division 1181 Fund argues that because Noia, a retired participant of the Con Ed Program, is arguably an "employee" under that plan for Rule 2 purposes, the administrator reasonably did not move on to consider whether Noia was more properly considered a "retired/laid-off employee" pursuant to Rule 3.

It is not rational to induce such an interpretative rule from the SDP at issue.[11] "The federal courts apply federal common law rules of contract interpretation to discern the meaning of the terms in an ERISA plan." *Harris*, 357 F.3d at 825. The Division 1181 Fund's proposed rule flouts the convention that, in interpreting a text with an applicable generic clause and a conflicting applicable specific clause, one generally applies the specific clause. *See Aramony v. United Way of Am.*, 254 F.3d 403, 414 (2d Cir. 2001) ("[E]ven if the general language of Article I, considered in isolation, is broad enough to manifest a generalized intent to replace benefit reductions caused by future limitations imposed by the Internal Revenue Code, Article I's broad language is limited by the specific operative language of Article V, which provides only for the replacement of benefit reductions caused by specific existing tax provisions."); Restatement (Second) of Contracts § 203(c) (1981) ("[S]pecific terms and exact terms are given greater weight than general language . . . ."). Suppose the posted rules of our courthouse billiards room read: "1. No clerks. 2. When more than two players are waiting, former clerks of Judge Weinstein play first." No one reading those rules could doubt that former clerks of Judge Weinstein had the right to play.[12]

In addition, under the Division 1181 Fund's reading, there would be no role for

---

[11]    There is no argument that any provision of the SDP explicitly establishes the rule.

[12]    Unfortunately, the billiards room itself (not just the rules) is hypothetical.

Rule 3 to play in the SPD because the term "employee" of Rule 2 would cover every possible application of the term "retired/laid-off employee" of Rule 3. It is arbitrary to include rules in a plan and then not apply them. "[U]nder federal common law 'a contract should be interpreted as to give meaning to all of its terms -- presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.'" *Harris*, 357 F.3d at 825 (quoting *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Personnel Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000)); *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 821 (7th Cir. 2007) (Posner, J.) (rejecting as "lack[ing] the appeal of common sense" a pension plan interpretation that would render a section of the plan superfluous); *D.E.W., Inc. v. Local 93, Laborers' Intern. Union*, 957 F.2d 196, 200 (5th Cir. 1992) ("A court cannot disregard as surplusage the succeeding provisions of a contract; it must give effect to all."). *Cf. Williams v. Taylor*, 529 U.S. 362, 404 (2000) (the interpretative rule against surplusage is a "cardinal principle of statutory construction"). The selection of an interpretation that reads an entire rule out of a coordination of benefits provision is divorced from reasonable induction, and would produce results in the application that are unpredictable to the beneficiary.

The Division 1181 Fund argues that it was reasonable to ignore Rule 3 by its own terms, since "[i]t is uncontroverted that the Con Ed Plan lacks any rule that is identical in language or substance to Rule 3 of the Division 1181 Plan." Division 1181 Fund Br. 21. The text of Rule 3 does not support this argument. What the rule provides is that "if the other health plan(s) do(es) not have this rule *and as a result the plans do not agree on which is primary*, this rule is ignored." Division 1181 Fund SPD 36 (emphasis added). Even if the Division 1181 Fund

19

is correct that the Con Ed Program lacks "this rule,"[13] as I have explained, the plans *do* agree on which is primary. Accordingly, the necessary condition for ignoring Rule 3 has not been met.

I am aware that "[i]n a situation '[w]here both the trustees [of an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.'" *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir.1983)). But I conclude that the Division 1181 Fund Board of Trustees did not apply a rational interpretation of their plan provision, and that their decision not to provide primary coverage before June 23, 2006 was unreasonable. There is therefore no cognizable dispute over the two plans' coordination of benefits for Noia's claims through June 23, 2006, because no party disputes the reasonableness of the decision by the Con Ed Program's administrator that the Con Ed Program was not the primary payer. The Division 1181 Fund must provide primary coverage for Noia's claims through June 23, 2006.

3.      The Coordination of Benefits After June 23, 2006

After the Division 1181 Fund altered its SPD, the coordination of benefits provisions became legitimately in conflict -- the competing provisions each make the other plan primary. The Con Ed Program contains a "special exception" to its "Dependent Rule" that a plan is primary when it provides coverage to "an employee, member, subscriber, or retiree":

> If you are Medicare-eligible and Medicare is secondary to the plan covering you as a dependent, and Medicare is primary to the plan covering you as a retiree, then . . . the plan covering you as a retiree is secondary

---

[13]      This determination by the Division 1181 Fund would likely be subject to *de novo* review, as the Fund has not shown that has the discretion to interpret the terms of another benefit plan.

and the plan covering you as a dependent is primary.

Con Ed SPD 82. Noia fits right into this exception, making his "dependent" plan, the Division 1181 Fund, primary. For its part, new Rule 2 of the Division 1181 Fund SPD provides that coverage "based on your employment," including former employment, is primary and "dependent" plans are secondary, such that:

> If you are a Participant and your spouse has retiree coverage under another plan and Medicare:
> . . .
> *For your spouse:* Your spouse's retiree coverage is primary, this Plan's Dependent coverage is secondary, and Medicare is third.

Division 1181 Fund SMM 1. Since this provision makes Noia's Con Ed Program retiree coverage primary, it conflicts with the Con Ed Program provision.

The Con Ed Program does not argue that the provisions in effect after June 23, 2006 do not conflict, but it does dispute the validity of the alteration of the plan by the Division 1181 Fund.[14] In particular, the Program argues that the record lacks evidence that the Division 1181 Fund Board of Trustees executed the alteration "in accordance with any established procedure." Memorandum of Law of Defendant Consolidated Edison Retiree Health Program in Support of Its Motion for Summary Judgment ("Con Ed Program Br.") 25. "For all we know," the Program remarks, "the material modification document was drafted by the Plan's lawyers . . . and then produced especially for this litigation, without any proper legal basis whatsoever." *Id.* at 26. But mere speculation that the Division 1181 Fund might have amended its plan in a

---

[14] In a footnote, the Con Ed Program sets forth the additional argument that the change of plan language makes my consideration of that language unripe, claiming that "[n]o claim for benefits was submitted" after the change. Memorandum of Law of Defendant Consolidated Edison Retiree Health Program in Support of Its Motion for Summary Judgment 15 n.25. But both plans have refused to preauthorize Noia's request for Ventavis. Noia Decl. ¶ 13, Jan. 25, 2007. Accordingly, the ripeness argument is without merit.

particular fashion, no matter how distasteful, does not raise a genuine issue of material fact (or, indeed, make a case that the Fund's amendment procedures were legally invalid). The Division 1181 Fund has submitted sworn statements that "[o]n June 23, 2006, the Division 1181 Fund's Board of Trustees issued a summary of material modification . . . that clarified the coordination of benefits rules contained in [the] Fund's Plan." D'Ulisse Decl. ¶ 18, Jan. 26, 2007.[15] While the characterization of the new provision as a "clarification" of the coordination of benefits rules, Division 1181 Fund SMM 1, is certainly disingenuous -- "reversal" is more like it, at least for retired dependents of covered employees -- the Con Ed Program has submitted no evidence that the amendment was not properly promulgated. I therefore cannot conclude that the amendment by the Board of Trustees was invalid.[16]

When, as here, reasonably interpreted coordination of benefits provisions are "mutually repugnant," federal common law applies to break the tie. *McGurl v. Trucking Employees of N. Jersey Welfare Fund, Inc.*, 124 F.3d 471, 480-83 (3d Cir. 1997). The next principal question for partial summary judgment is what tie-breaking rule to apply in this case. It is possible to conceive of a rule that would make each of Noia's three welfare-benefit plans

---

[15]     The Con Ed Program's attack on the credibility of and foundation for the Division 1181 Fund's sworn statements is meritless.

[16]     The Con Ed Program also argues that the alteration was arbitrary and capricious, in violation of the Division 1181 Fund's "fiduciary duty to act solely in the interest of the [Fund's] participants and beneficiaries." *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1040 (2d Cir. 1985), *cert. denied*, 475 U.S. 1012 (1986). This argument is without merit. The Con Ed Program offers no evidence that the alteration was adopted in bad faith, and a plan's fiduciary duty does not require it to provide benefits to a participant in perpetuity. "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). The Division 1181 Fund contends that it not only had the right to amend the plan but the duty to do so, to cure the conflict between the generic language of old Rule 2 and the specific language of old Rule 3 in the coordination of benefits provisions, and thereby to avoid the processing cost of claim disputes. *See* 29 U.S.C. § 1104(a)(1)(A)(ii) (providing that ERISA fiduciaries must discharge their duties to "defray[] reasonable expenses of administering the plan"). In any event, I conclude there was no legal or equitable barrier to the June 23, 2006 amendment.

primary.

The Division 1181 Fund proposes that I apply the "employer first" rule established in *McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 124 F.3d 471 (3d Cir. 1997), and further claims that the Con Ed Program, being the program of Noia's employer, would be primary under that rule. The Con Ed Program argues that making it primary would result in an award of unbargained-for benefits to Noia, because by its nature the Con Ed Program is "supplemental" to Medicare. Everybody appears to agree that Medicare cannot be the primary payer as long as the Division 1181 Fund is in the picture, because pursuant to the Medicare Secondary Payer Law "[a] large group health plan . . . may not take into account that an individual . . . who is covered under the plan by virtue of the individual's current employment status with an employer is entitled to [Medicare] benefits." 42 U.S.C. § 1395y(b)(1)(B)(i). Thus, according to the parties, making the Division 1181 Fund primary would violate the employer-first rule, making the Con Ed Program primary would result in extracontractual damages, and making Medicare primary would violate Medicare law.

I cannot resolve this conflict on the papers submitted. First, there remains a factual dispute about the extent to which the Con Ed Program is "supplemental" to Medicare. The plaintiffs maintain that the Con Ed Program is not wholly or necessarily Medicare-dependent, suggesting that the Program provides comprehensive benefits to participants like Noia even when Medicare would deny those benefits, *see* Noia's Rule 56.1 Response ¶ 16, while the Con Ed Program maintains that it only "pays, *if at all*, a percentage of approved Medicare Part A and B expenses that have not been fully paid for by Medicare." Con Ed's Rule 56.1 Statement ¶ 17 (citing Con Ed SPD 64-66) (emphasis added). The dispute is material because if

the Con Ed Program actually provides comprehensive benefits to participants like Noia even when Medicare would deny those benefits, that is, if it is not merely supplementary with respect to Medicare, it would not necessarily frustrate the Program's design to require it to pay first. This issue therefore must be resolved before I decide whether to consider the Con Ed Program's "supplementary" design in breaking the coordination of benefits tie.[17]

Second, the briefs do not adequately address or compare the federal policies at stake. Noia urges me to adopt the employer-first rule, but does not explain why I should do so as a matter of policy. The Division 1181 Fund, too, fails to explain why employer plans particularly (and not dependent plans, for example) should be required to pay first as a default rule. The Con Ed Program argues that the Medicare Secondary Payer rules mandate that the Con Ed Program be protected from paying first, but does not explain the rationale for such protection. Accordingly, the parties are instructed to provide, by letter, supplementary briefing on the policies that would be advanced and frustrated by adoption of each rule.[18]

CONCLUSION

For the reasons set forth above, the motions for partial summary judgment are granted in part and denied in part. Specifically, the motions are granted insofar as they seek a

---

[17]     The Con Ed Program evidently concedes that it is a primary payer for Noia's Medicare Part D benefits. *See* Con Ed Program Br. 6 ("To date, the Prescription Drug Plan has continued to cover Mr. Noia's Part D prescription drug expenses . . . as a primary payer.") (citations and footnote omitted). The Division 1181 Fund seizes on this concession as yielding the entire field, arguing that because a single coordination of benefits provision coordinates both Part D benefits on the one hand and Part A and B benefits on the other, primary status on one set of benefits must be primary status on the other. But the Con Ed Program's position on Part D benefits is of a piece with its proposed "supplemental" rule: given the mutually conflicting coordination of benefits provisions, the Program asks me to make it pay after Medicare only to the extent it is "supplemental" to Medicare. When it is not "supplemental," as is the case with the Part D benefits, the Program concedes primary status (presumably pursuant to the employer-first rule).

[18]     They shall also brief the policies at stake in adopting the pro-rata rule of *Winstead v. Indiana Insurance Co.*, 855 F.2d 430, 432 (7th Cir. 1988).

partial summary judgment that the Division 1181 Fund must provide primary coverage for

Noia's claims through June 23, 2006, but they are otherwise denied. The parties shall appear for

a status conference on September 27, 2007 at 10:00 a.m. to set a schedule for supplementary

submissions and a date for trial, should one be necessary.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
      September 14, 2007